**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ERICA LAFFERTY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 3:20-cv-1723(CSH) |
| v. | ) | |
| | ) | |
| ALEX JONES, *et al.*, | ) | |
| | ) | December 2, 2020 |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION TO REMAND**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................1

I.   FACTUAL AND PROCEDURAL BACKGROUND  ......................................................3

    A.   These Consolidated Actions Were Commenced Between Thirty Months
       and Twenty-Three Months Ago.......................................................................4

    B.   The Plaintiffs Amply Alleged Claims Against the Non-Diverse Defendant..........5

    C.   The Plaintiffs Attempted to Move Forward Against All Defendants,
       Including Sklanka, But the Jones Defendants Caused Delay after Delay ..............6

    D.   Even After the Affirmance of Sanctions, the Jones Defendants Continued
       Their Delay Tactics.......................................................................................11

II.   REMAND IS REQUIRED BECAUSE THE JONES DEFENDANTS FAIL
    TO SATISFY 28 U.S.C. § 1446(c)(1) .................................................................13

    A.   The One-Year Time Deadline for Removal Has Run ...........................................13

    B.   The Jones Defendants' Burden to Show Bad Faith Is a Heavy One  ...................13

    C.   The Record Shows Normal Litigation Conduct, Not Bad Faith ...........................16

    D.   The Facts of this Case Do Not Remotely Resemble Cases Where
       Bad Faith Has Been Found ..............................................................................22

    E.   The Case's Progress in State Court Further Militates Against Removal..............25

    F.   The Bad Faith Exception's Equitable Nature Further Counsels
       Against Removal.............................................................................................26

III.   REMAND IS REQUIRED BECAUSE THE UNANIMITY RULE IS
    NOT SATISFIED ...........................................................................................27

IV.   THE COURT SHOULD AWARD FEES AND COSTS PURSUANT TO
    28 U.S.C. § 1447(c) .........................................................................................29

V.   CONCLUSION.................................................................................................32

## INTRODUCTION

This is the removing defendants' second flawed attempt to bring these related cases to federal court. Two years ago, the Jones defendants asserted non-diverse defendant Cory Sklanka was fraudulently joined, a weak argument that Judge Hall rejected. Now the Jones defendants attempt to remove in violation of the one-year deadline for removal, and the record contains no evidence of bad faith conduct by the plaintiffs, let alone the "obviously strategic behavior" or "nefarious conduct" designed to prevent removal that is necessary to extend that deadline. *Martinez v. Yordy*, 2016 WL 8711443, at *3 (E.D.N.Y. Feb. 19, 2016) (citation omitted); *J.P. Morgan Chase Bank, N.A. v. Caires*, 2017 WL 3891663, at *3 (D. Conn. Sept. 6, 2017) (Hall, J.) (citation omitted). The removal papers also fail to satisfy the rule of unanimity. Although they contain an assertion that there is unanimous consent to this removal, two of the removing defendants state they did not provide such consent. Remand is mandatory.

Removal based on diversity jurisdiction is not permitted "more than 1 year after commencement of the action unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1). These consolidated cases were commenced between two and a half years and twenty-three months ago. For roughly two years, the plaintiffs proceeded against Sklanka, treating him just like the other diverse defendants in the case. The plaintiffs recently withdrew against Sklanka only because his carrier obtained a ruling freeing it from any obligation to provide coverage for these claims, and because the Jones defendants intended to leverage a stay of discovery for themselves based on his continued presence in the case. The Jones defendants' threat to obtain a stay of discovery was particularly salient because for the previous two years the Jones defendants had stalled discovery and progress toward trial, first engaging in what the Connecticut Supreme Court called a pattern

1

of "obfuscation and delay" and "a whole picture of bad faith litigation misconduct," Ex. A, *Lafferty v. Jones*, 2020 WL 4248476, at *17-18 (Conn. July 23, 2020), and then by taking an appeal from the well-deserved sanction that resulted and obtaining a stay of the entire case during the pendency of the appeal. The plaintiffs' decision to withdraw against an apparently assetless, *pro se* defendant in order to avoid further delay by the Jones defendants was eminently reasonable. In short, there is no evidence whatsoever that the plaintiffs engaged in bad faith conduct designed to prevent removal.

Remand is also required because the removing defendants fail to satisfy the rule of unanimity, which requires "unambiguous written consent" from each defendant. *Nat'l Waste Assocs.*, *LLC v. TD Bank, N.A.*, 2010 WL 1931031, at *3 (D. Conn. May 12, 2010) (Haight, J.); 28 U.S.C. § 1446(b)(2)(A). The Jones defendants did not provide *any* written consent to *this* removal from the other defendants. Their attempt to use consent to the prior removal as consent to this removal is flawed. Written consent to a removal that was attempted two years ago and failed is not meaningful consent to this removal. In an attempt to patch over this defect, the Jones defendants' counsel represents that the other defendants "advised" that the 2018 consents "have not been withdrawn." ECF 1, Notice of Removal, ¶ 25. This representation is at best misleading: counsel for the other defendants state they were not asked to and did not provide positions concerning this removal.[1] These shortcomings alone are an independent basis for remand.

Lastly, there is overwhelming evidence that this removal is another obstructive tactic by the Jones defendants. These consolidated cases came first to this Court two years ago, when the Jones defendants asserted Sklanka was fraudulently joined as the basis for diversity jurisdiction

---

[1] One counsel has provided an affidavit to that effect (Ex. B); the other counsel's statement was made by email (Ex. C). Both are described in greater detail in Part III below.

removal. This Court remanded, noting that the Jones defendants had provided only a "thin" basis "upon which to seek removal" sufficient to avoid an award of costs and attorney fees. *Lafferty v. Jones*, 2018 WL 5793791, at *6 (D. Conn. Nov. 5, 2018) (Hall, J.). Today, they lack the support of even this slender reed. It was the Jones defendants who ran the clock. Their delay and misconduct was so significant that the trial court sanctioned them by striking their special motion to dismiss, a motion specially created by Connecticut's anti-SLAPP statute. They elected to appeal the sanction and sought and obtained stays of all proceedings during the thirteen-month pendency of the appeal. Sanctions have not led to better behavior. This untimely removal—premised on inadequate and inaccurate representations regarding bad faith and consent—is their latest delaying tactic.

Section 1446 requires that the case be remanded. Because there is no reasonable basis for the Jones defendants' attempted removal, the Court should award reasonable costs and attorney's fees under § 1447(c).

## I.      FACTUAL AND PROCEDURAL BACKGROUND

The plaintiffs, families of students and educators slain at Sandy Hook Elementary School on December 14, 2012 and a first-responder to the scene, allege the defendants engaged in a scheme to profit from the shooting at Sandy Hook Elementary School. The plaintiffs allege the defendants knowingly spread and grew the lie that the Sandy Hook shooting was staged, and that the plaintiffs are actors who faked their relatives' deaths. The plaintiffs assert claims for defamation, false light, negligent and intentional infliction of emotional distress, and violation of the Connecticut Unfair Trade Practices Act.

### A. These Consolidated Actions Were Commenced Between Thirty Months and Twenty-Three Months Ago

These three actions are brought by plaintiffs William Aldenberg, Jacqueline Barden, Mark Barden, Jennifer Hensel, Ian Hockley, Nicole Hockley, Erica Lafferty, Jeremy Richman, Carlos M. Soto, Donna Soto, Jillian Soto, Carlee Soto-Parisi, David Wheeler, Francine Wheeler, William Sherlach, and Robert Parker. The defendants are: Alex Emric Jones and his media companies Infowars LLC, Free Speech Systems LLC and Prison Planet TV LLC ("the Jones defendants"); hoax perpetrators Wolfgang Halbig and Cory T. Sklanka; and the Jones defendants' broadcast promoters Genesis Communications Network, Inc. ("Genesis") and Midas Resources, Inc. ("Midas"). The first action filed, *Lafferty, et al. v. Jones, et al.*, UWY-CV18-6046436-S was commenced May 23, 2018, with the last defendant to receive a physical copy of the summons and complaint doing so on May 29, 2018. Dkt. 100.30; *see also* Dkts. 101, 102, 105 (supplemental returns).[2] The second action, *Sherlach v. Jones, et al.,* UWY-CV18-6046437-S, was commenced on July 2, 2018. Dkt. 100.30; *see also* Dkts. 101, 103, 104, 105, 117, 132 (amended and supplemental returns). The third action, also titled *Sherlach, et al. v. Jones, et al.,* UWY-CV18-

---

[2] The Jones defendants claim Alex Jones was not served until June 13, 2018. ECF 1, ¶ 2. That is not so. The plaintiffs served Jones with the first summons and complaint in these consolidated cases on May 23, 2018. Dkt. 100.30. That evening Jones went on his show and held forth about the lawsuit, while waving around a copy of the complaint, for just under 50 minutes *See* Exhibit D, Screenshots of Alex Jones Show of May 23, 2018; *see also Watch: Alex Jones' Statement on New Sandy Hook Lawsuit*, INFOWARS.COM (May 23, 2018), https://archives.infowars.com/live-alex-jones-statement-on-new-sandy-hook-lawsuit/ (discussing *Lafferty* complaint, containing embedded link to since-removed YouTube video, and containing embedded PDF copy of summons and complaint).

6046438-S, was commenced November 29, 2018. Dkt. 100.30; *see also* Dkts. 101, 102, 103, 111, 112 (supplemental returns).[3]

    The actions are consolidated by order of the Connecticut Superior Court. Dkts. 117, 117.10.

### B.  The Plaintiffs Amply Alleged Claims Against the Non-Diverse Defendant

    The plaintiffs' complaints alleged the same claims against non-diverse party Cory Sklanka that they allege against the diverse defendants: invasion of privacy by false light, defamation, intentional infliction of emotional distress, negligent infliction of emotional distress, violations of the Connecticut Unfair Practices Act, and civil conspiracy to commit those torts.

    The Jones defendants assert the plaintiffs' allegations are "minimal," ECF 1, Notice of Removal ¶ 22. This argument is poorly chosen: this Court considered and rejected it two years ago. *Lafferty*, 2018 WL 5793791, at *5 (finding based on a review of the allegations that Sklanka was not fraudulently joined). In addition, it is inaccurate. The plaintiffs' allegations against Sklanka far exceed what is required in Connecticut pleading practice.[4] In addition, the plaintiffs have developed the allegations against Sklanka over time. The original *Lafferty* complaint amply alleges claims against Sklanka. *Lafferty*, Compl. ¶¶ 336–394; the two later-filed complaints (*Sherlach I* and *Sherlach II*), allege additional facts. *Sherlach I*, Dkt. 120, Am. Compl. ¶¶ 416–474; *Sherlach II,* Compl. ¶¶ 416–474.

    The plaintiffs allege that Sklanka participated in the development of the hoax narrative that Jones then broadcast. Sklanka assisted hoax proponent and frequent Infowars presenter

---

[3] All Connecticut Superior Court docket references following this point are to the docket in *Lafferty, et al. v. Jones*, *et al*., UWY-CV18-6046436-S, unless otherwise indicated. The docket sheets for all three cases are enclosed as Exhibits E, F, and G.

[4] The Connecticut Practice Book § 10-1 provides that "[e]ach pleading shall contain a plain and concise statement of the material facts on which the pleader relies, but not of the evidence by which they are to be proved[.]"

Wolfgang Halbig in promoting the hoax story, *Sherlach I*, Dkt. 120, Am. Compl. ¶¶ 55, 57, 70, and assisted Infowars to record Halbig's activities in Newtown, *id.* ¶ 85. He also spread the same lies himself, publishing on MonteFrank.com that Avielle Richman, the daughter of plaintiffs Jeremy Richman and Jennifer Hensel, "is a fabricated identity," *id.* ¶ 59, and asserting that the Mr. Richman collected donations for the Avielle foundation "under false pretenses that his daughter died." *Id.*; *see also* ¶¶ 61–63 (Sklanka also produced his own hoax broadcasts, urged listeners to follow Halbig's hoax broadcasts on defendant Genesis's network, and urged listeners to press Alex Jones to "investigate" further).

The plaintiffs further alleged that, based on witness statements, they believed there existed additional "podcasts contain[ing] publications by Sklanka within the statute of limitations asserting that the Sandy Hook shooting was a hoax and that the families of victims fabricated their children's deaths." *Id.* ¶ 61. However, Sklanka "deleted his YouTube profile and other social media accounts, thus hiding those videos from public view." *Id.* ¶ 64.

### C. The Plaintiffs Attempted to Move Forward Against All Defendants, Including Sklanka, But the Jones Defendants Caused Delay after Delay

On July 13, 2018, the Jones defendants filed their first Notice of Removal. *Lafferty*, 2018 WL 5793791, at *1. They argued that the plaintiffs had fraudulently joined Sklanka. *Id.* The Court rejected their arguments, finding that Sklanka was not fraudulently joined. *Id.* In fact, in considering whether to award removal fees, it noted specifically that the Jones defendants had had only a "thin" basis "upon which to seek removal." *Id.* at 6.

Following remand, the Jones defendants, defendant Midas, and defendant Sklanka filed special motions to dismiss the plaintiffs' complaints under Conn. Gen. Stat. § 52-196a(b), Connecticut's Anti-SLAPP statute. *See* Ex. A, *Lafferty*, 2020 WL 4248476 at *2–3; Sklanka Spec. Mtn. to Dismiss & Memo. in Support, Dkt. 118; Midas Spec. Mtn. to Dismiss & Memo. in Support,

Dkts. 142, 143.[5] When a special motion to dismiss is filed, Section 52-196a stays discovery. Conn. Gen. Stat. § 52-196a(d).[6] Only court-ordered, limited discovery is permissible until the special motion to dismiss is decided. *Id.* The plaintiffs obtained permission to serve limited discovery pursuant to § 52-196a(d) against all the defendants, including Sklanka. Ex. A, *Lafferty*, 2020 WL 4248476 at *2; Pls.' Mot. For Limited Discovery, Dkt. 123 & Ex. A (seeking discovery against Sklanka specifically); Order, Dkt. 123.10.

The plaintiffs served Sklanka with special interrogatories and requests for production on January 24, 2019. Ex. H, Pls.' First Set of Special Interrog. & Req. for Prod. He produced responses on February 25, 2019, and then supplemented them on March 13, 2019. Ex. I, (production cover email and compliance notice). Counsel agreed to schedule Sklanka's deposition for April 12, 2019, Ex. J (scheduling emails). Before the deposition could proceed, however, the Jones defendants' noncompliance stalled discovery against all parties.[7]

The Jones defendants' refusal to cooperate in discovery delayed the entire case. Throughout the pendency of these cases, the plaintiffs have filed no fewer than twelve motions to

---

[5] The Connecticut Supreme Court's decision, Ex. A, *Lafferty v. Jones*, 2020 WL 4248476, contains a useful procedural summary. This brief accordingly refers to that summary unless a more specific procedural reference is necessary.

[6] Subsection (d) of the statute provides in pertinent part: "The court shall stay all discovery upon the filing of a special motion to dismiss. The stay of discovery shall remain in effect until the court grants or denies the special motion to dismiss and any interlocutory appeal thereof. Notwithstanding the entry of an order to stay discovery, the court, upon motion of a party and a showing of good cause, or upon its own motion, may order specified and limited discovery relevant to the special motion to dismiss."

[7] On April 4, 2019, counsel for Sklanka wrote to plaintiffs' counsel stating: "We have been holding 4/12/19 for Cory's depo. In light of recent events, I assume it is no longer going forward on that date." Ex. K (email). The "recent events" referred to in the email are the Jones defendants' noncompliance, described in the next two paragraphs. Without substantial compliance from the Jones defendants, the plaintiffs had to defer the depositions of the other defendants.

compel or for sanctions regarding noncompliance with discovery.[8] The Jones defendants missed the court-ordered date they had set for compliance, February 23, 2019. Ex. A, *Lafferty*, 2020 WL 4248476 at *2–3. On March 1, 2020, they substituted counsel and then sought extensions of time until March 20, 2019 to produce their discovery materials. *Id.* The plaintiffs opposed these extensions. Pls.' Memorandum re: Defs.' MET, Dkt. 197, Mar. 7, 2020. The court warned that if the Jones defendants "again fail[ed] to comply with the court ordered deadline," it would "entertain sanctions." Dkt. 196.10 (emphasis added). Two days before the March 20, 2019 discovery deadline, the defendants again moved for an extension, Defs.' Mot. for Ext. of Time, Dkt. 203, Mar. 18, 2019, which the plaintiffs once again opposed. Pls.' Obj. to Mot. for Ext., Dkt. 204, Mar. 19, 2019. This time, the trial court denied the extensions. Ex. A, *Lafferty,* 2020 WL 4248476 at *3. The Jones defendants had "blown past the court's deadlines," it explained, noting, "[t]here hasn't been a single piece of paper [produced] or interrogatory answered." *Id.* On March 20, the plaintiffs moved for sanctions based on the Jones defendants' repeated noncompliance. *Id.*

After further delays in April, the Jones defendants began a rolling compliance marked with abuses and resistance. Although the Jones defendants claimed they had valuable, proprietary marketing and web analytics information, Affidavit, Dkt. 214, Mar. 29, 2019, they did not produce it. Specially ordered depositions confirmed that Jones and his companies had withheld responsive information within their possession and control, including responsive web analytics data that was not produced. Dkt. 255. The plaintiffs moved again to compel production. Dkt. 255. The

---

[8] *See* Mot. to Compel, Dkt. 192, Mar. 1, 2019; Mot. for Order of Sanctions, Dkt. 206, Mar. 20, 2019; Mot. for Order of Compliance, Dkt. 223, Apr. 11, 2019; Mot. to Compel, Dkt. 227, Apr. 22, 2019; Mot. for Order for Discovery re: Compliance, Dkt. 234, Apr. 22, 2019; Mot. to Compel, Dkt. 235, Apr. 25, 2019; Mot. to Compel, Dkt. 255, May 29, 2019; Mot. to Compel, Dkt. 256, May 30, 2019; Mot. to Compel, Dkt. 259, June 10, 2019; Mot. for Order, Dkt. 263, June 14, 2019; Mot. to Re-Compel, Dkt. 309, Nov. 12, 2020; Mot. for Order, Dkt. 310, Nov. 16, 2020.

defendants again opposed. Dkts. 257, 258. After another hearing, the trial court ordered the defendants to produce the discovery it had previously ordered, Ex. A, *Lafferty*, 2020 WL 4248476 at *2–3, saying the Jones defendants' production was "simply not full and fair compliance." Dkt. 255.10. The court warned that it would "consider appropriate sanctions for the defendants' failure to fully and fairly comply" with its latest orders. *Id.*

In reviewing a tranche of the Jones defendants' production, the plaintiffs' e-discovery provider discovered files containing child pornography. Ex. A, *Lafferty*, 2020 WL 4248476 at *5–6. Plaintiffs' counsel immediately contacted the Federal Bureau of Investigation, which found that there was no indication that Jones had opened the child-pornography images or was otherwise a target of investigation. *Id.* Plaintiffs' counsel then set up a telephone call between himself, the Connecticut U.S. Attorney's office, and counsel for the Jones defendants, during which defense counsel was advised of these developments. Dkt. 264.

On Friday, June 14, 2019, Jones and his attorney appeared together on Jones's show to discuss this case. Ex. A, *Lafferty*, 2020 WL 4248476 at *4. During the broadcast, Alex Jones accused plaintiffs' counsel of having planted child pornography in emails the Jones defendants had produced to the plaintiffs. *Id.* While theatrically stroking an image of plaintiffs' counsel's face, Jones stated:

> Chris Mattei, Chris Mattei. Let's zoom in on Chris Mattei. Oh, nice little Chris Mattei. . . . You think you'll put on me—anyways, I'm done. Total war. You want it? You got it. I'm not into kids like your Democratic party, you cocksuckers. So get ready. . . . The point is, I'm not putting up . . . with these guys anymore, man, and their behavior, 'cause I'm not an idiot. They literally went right in there and found this hidden stuff.

*Id.* at *4. During this diatribe, he repeatedly pounded his fist on the image of plaintiffs' counsel's face. *Id.* Jones offered "[o]ne million dollars to put [plaintiffs' counsel's] head on a pike" for "trying to set [Jones] up with child porn." *Id.* He repeatedly referred to plaintiff's counsel in

profane terms, called him a "gang member," and said he would "get [plaintiffs' counsel's] ass." *Id.* He continued, saying he was "not BSing," called plaintiffs' counsel a "little dirt bag," said one million dollars was "on the street" for him, called him a "white [Jew] boy jerkoff," and said, "I will give everything I have to stop living in this world with these people." *Id.* at *5 He continued: "And so, if they want war—you know, it's not a threat. It's like an AC/DC song. If you want blood, you've got it. Blood on the streets, man." *Id.*

On June 17, 2019, that Monday, the plaintiffs filed motions asking the trial court to review Jones's broadcast and address it. *Id.* at *6. On June 18, 2020, the trial court imposed sanctions against the Jones defendants both for Jones's broadcast and their "obfuscation and delay" in discovery. *Id.* at *17. In doing so, it held that Jones's actions had been "indefensible, unconscionable, despicable, and possibly criminal," and that the "deliberate tirade and harassment and intimidation against Attorney Mattei and his firm [were] unacceptable and sanctionable." *Id.* at *18. By way of sanction, the trial court struck the Jones defendants' special motions to dismiss. *Id.*

The Jones defendants filed an expedited public-interest appeal under Conn. Gen. Stat. § 52-265a, *id.* at *1, and the Connecticut Supreme Court accepted the appeal. The Jones defendants moved for a stay "of all proceedings" in the case until the appeal was determined, Dkt. 276, which was granted, Dkt. 276.10. As a result of this ruling, the case did not move forward against *any* defendant, including Sklanka, during the entire pendency of the appeal. The case was stayed for approximately eleven months, while the appeal was pending, until it was unanimously affirmed. App. Ct. Mat'l (Sanctions Orders Aff'd), Dkt. 290.50, July 23, 2020. Its forward progress on the merits was stayed another two months while the Jones defendants sought reconsideration of the Supreme Court's unanimous decision.

Until August 2020 Sklanka's carrier had provided Sklanka with a defense while it sought to obtain a ruling that would free it from the duty to defend or indemnify Sklanka. The carrier finally succeeded in obtaining that ruling on June 5, 2020. *See USAA General Indemnity Corp. v. Sklanka*, Conn. Sup. Ct. Dkt. UWY-CV19-6048057. On August 14, 2020, Sklanka's counsel moved to withdraw their appearance. Dkt. 292. The trial court granted that motion on September 8. Dkt. 292.20, and Sklanka entered *pro se* appearances. Appearance, Oct. 19, 2020.[9] Sklanka was therefore without coverage, rendering a judgment against him of little value. As a *pro se* litigant, he had the potential to complicate the scheduling and taking of remote depositions necessitated by the Covid-19 pandemic. Although he was now *pro se*, Sklanka's special motion to dismiss (which had been filed by counsel at the outset of the case) remained pending.

### D. Even After the Affirmance of Sanctions, the Jones Defendants Continued Their Delay Tactics

Finally, in September 2020, the case was ready to proceed again. The Jones defendants were not. At a status conference on October 2, 2020, they took the position that discovery should continue to be stayed while the other defendants' special motions to dismiss were adjudicated. Although it was a blatant ploy to obtain further delay, this argument had some legal viability. The Anti-SLAPP statute that authorizes special motions to dismiss provides that "[t]he court shall stay *all* discovery upon the filing of a special motion to dismiss." Conn. Gen. Stat. § 52-196a(d) (emphasis added). In a further sign of the argument's potential viability, the trial court immediately ordered briefing on the subject, due on October 23. Oct. 2, 2020 Order, Dkt. 296. The plaintiffs also recognized that the potential delay associated with adjudication of the remaining special motions to dismiss was significant. In order to have those motions adjudicated, at the very least

---

[9] The Connecticut Superior Court does not assign docket numbers to appearances. Appearances show by date filed at the commencement of the docket sheet.

the plaintiffs would have had to complete discovery against Sklanka and Midas, file opposition briefs, perhaps proceed with an evidentiary hearing, and wait for a decision – a potential delay of several more months.

The other defendants with special motions to dismiss still pending were Midas and Sklanka. Between the October 2 status and conference and October 23, the plaintiffs took steps that would undercut the Jones defendants' argument by disposing of those special motions to dismiss. The plaintiffs reached an agreement with Midas whereby it withdrew its special motion to dismiss without prejudice. *See* Withdrawal, Dkt. 303. Securing any recovery against Sklanka, now without insurance coverage, would be arduous or impossible, while dealing with him in his *pro se* capacity and litigating his special motion to dismiss would take time and resources better focused on discovery against the Jones defendants. The plaintiffs accordingly withdrew against Sklanka, Withdrawal, Dkt. 301, negating his special motion to dismiss. The plaintiffs advised the court of these developments on October 23, the date supplemental briefing on stay argument had been due. *See* Memorandum, Dkt. 302, Oct. 23, 2020.[10] On October 27 the trial court denied the Jones defendants' request for a continued stay and indicated that discovery would go forward. Order, Dkt. 304.

With all the Jones defendants' arguments for a stay of discovery finally resolved, the plaintiffs noticed depositions, to which the Jones defendants promptly objected. Dkts. 305, 306. The plaintiffs also sought discovery which had been ordered to be produced in April and May 2019 but was never produced. Dkt. 309. And the plaintiffs sought specific orders regarding deposition

---

[10] In a memorandum filed before the plaintiffs advised the Court of these developments, the Jones defendants continued to press the argument that discovery against them should be stayed while the other defendants' special motions to dismiss were adjudicated. Jones Defs.' Br. in Support of Continued Stay, Dkt. 300.

procedures in order to forestall some of the Jones defendants' delaying tactics. Dkt. 310. These matters were scheduled to be taken up with the trial court in a November 18, 2020 status conference. By filing notices of removal in these consolidated cases late in the evening of November 17, the Jones defendants avoided that conference, effectively stalling discovery once again.

## II.   REMAND IS REQUIRED BECAUSE THE JONES DEFENDANTS FAIL TO SATISFY 28 U.S.C. § 1446(c)(1)

A case may not be removed based on diversity jurisdiction "more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1). The Jones defendants come nowhere close to meeting their high burden to show bad faith. The circumstances of this case evidence normal, reasonable litigation behavior—they do not remotely resemble *any* case in which bad faith has been found. Remand is required.

### A.  The One-Year Time Deadline for Removal Has Run

The Jones defendants do not dispute that the one-year deadline to remove has run. ECF 1, Notice of Removal, ¶ 5. Not only that, it ran long ago. This removal comes roughly two and a half years after the commencement of the first of these consolidated cases and twenty-three months after the commencement of the last.

### B.  The Jones Defendants' Burden to Show Bad Faith Is a Heavy One

"A case may not be removed under [28 U.S.C. § 1446](b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff acted in bad faith in order to prevent a defendant from removing the action." *U.S. Bank Trust v. Walbert*, 2017 WL 3578553, at *2 (D. Conn. Aug. 18, 2017) (Haight, J.) (quoting 28 U.S.C. § 1446(b)). "Congress intended the bad faith exception to be 'limited in

scope.'" *Cruz v. Stop & Shop Supermarket Co. LLC*, 2020 WL 3430193, at *4 (S.D.N.Y. June 23, 2020) (Abrams, J.) (quoting H.R. Rep. No. 112-10 at 15). As a result, a party seeking to show bad faith sufficient for removal under § 1446(c)(1)—as the Jones defendants do here—faces an exceedingly heavy burden.

As the party seeking removal under 28 U.S.C. § 1446(c)(1), the Jones defendants have the burden of proving it is appropriate. "Where, as here, jurisdiction is asserted by a defendant in a removal petition, it follows that the defendant has the burden of establishing that removal is proper. *See R.G. Barry Corp.* v. *Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir. 1979); *see also* 14A Wright & Miller § 3721, at 209-10 ("[d]efendant always has the burden of establishing that removal is proper"); *United Food & Commercial Workers Union, Local 919 v. Centermark Properties Meriden Square*, 30 F.3d 298, 301 (2d Cir. 1994); *see also Cruz v. Stop & Shop Supermarket Co. LLC*, 2020 WL 3430193, at *2 (S.D.N.Y. June 23, 2020) (Abrams, J.). To meet that burden here, they "must establish the plaintiffs' bad faith by 'clear and convincing evidence.'") *Marin v. Sephora USA, Inc.*, 2020 WL 3999711, at *7 (S.D.N.Y. July 15, 2020) (McMahon, C.J.) (citing *Ehrenreich v. Black*, 994 F. Supp. 2d 284, 290 (E.D.N.Y. 2014) (Garaufis, J.)); *Khakimova v. Acme Markets, Inc.*, 2020 WL 5511537, at *2 (E.D.N.Y. Sept. 14, 2020) (Ross, J.) (same)

(citations omitted).[11] "Removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Cruz*, 2020 WL 3430193 at *2 (citing *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013)). All facts in the record at the time of removal "may be considered," and all allegations in the complaint are "accepted as true." *Walbert*, 2017 WL 3578553 at *2 (citing *Wachtell, Lipton, Rosen & Katz v. CVR Energy, Inc.*, 18 F. Supp. 3d 414, 416 n.2 (S.D.N.Y. 2014)).

Section 1446(c)(1)'s concept of bad faith is a narrow one, activated only by "obviously strategic behavior" intended to prevent removal. *Martinez v. Yordy*, 2016 WL 8711443, at *3 (E.D.N.Y. Feb. 19, 2016) (Cogan, J.) (quoting *Hill v. Delta Int'l Mach. Corp.*, 386 F. Supp. 2d 427, 433 (S.D.N.Y. 2005) (Scheindlin, J.)). This is a high bar: "the phrase 'bad faith' in section 1446 relates to nefarious conduct that aims to defeat an opponent's right to remove." *J.P. Morgan Chase Bank, N.A. v. Caires*, 2017 WL 3891663, at *3 (D. Conn. Sept. 6, 2017) (Hall, J.) (emphasis added) (citing *Ehrenreich*, 994 F. Supp. 2d at 288–89). Usually, it "must relate to a party's conduct obscuring facts that would otherwise justify removal." *Id.*

---

[11] Ultimately, the standard of proof is immaterial because the Jones defendants present no evidence of bad faith whatsoever. However, the clear trend in this circuit is that § 1446(c)(1) bad faith must be proved by clear and convincing evidence. *See Marin*, 2020 WL 3999711 at *7; *Khakimova*, 2020 WL 5511537 at *2; *Ford-Smith v. HMS Host Corp.*, 2020 WL 1242394, at *5 (N.D.N.Y. Mar. 16, 2020); *Iqbal v. Normandin Transit, Inc.*, 2016 WL 3563218, at *1 (W.D.N.Y. July 1, 2016); *Forth v. Diversey Corp.*, 2013 WL 6096528, at *2 (W.D.N.Y. Nov. 20, 2013). This is the correct standard: like fraudulent joinder, Congress intended § 1446(c)(1) to be a narrow exception that showed "respect for the state courts." *Hill*, 386 F. Supp. 2d at 431; *Ehrenreich*, 994 F. Supp. 2d at 290 (comparing two). Additionally, it is the standard for bad faith in other contexts. *See Kerin v. U.S. Postal Serv.*, 218 F.3d 185, 191 (2d Cir. 2000) (standard for common-law bad faith for fee award). There are, however, some cases in this circuit that determined bad faith without referring to standard of proof. In addition, *Walbert*, 2017 WL 3578553 at *2, mentions the preponderance standard in a case dealing with bad faith, although it does not directly reference it in its bad-faith analysis and appears merely to be referencing the general principle that the removing party bears the burden of proof to establish jurisdiction. *See id.* ("The party asserting jurisdiction must prove that jurisdiction is proper by a preponderance of the evidence and that the procedural requirements have been met.").

It is not nearly enough that a plaintiff "plainly desires to try this case in state court"—there must be a "showing of . . . obviously strategic behavior" *specifically* to avoid removal. *Hill*, 386 F. Supp. 2d at 433. "The timing of a plaintiff's filings in state court . . . is insufficient alone to support a finding of bad faith." *Cruz*, 2020 WL 3430193 at \*4. "Even where delay in defendants' removal could be traced to [the] plaintiff's actions, courts have declined to excuse an untimely removal where [the] plaintiff's actions did not evince a specific desire to prevent removal." *Id.* (collecting cases). "Garden variety litigation misconduct" is insufficient—it must be clearly connected to an improper desire to avoid removal. *Caires*, 2017 WL 3891663 at \*3. The burden climbs still higher when, as in this case, there has been significant progress made in the state forum: an "'egregious, clear pattern of forum manipulation' is necessary to overcome [the] interest in judicial efficiency." *Hill*, 386 F. Supp. 2d at 431 n.22 (quoting *Foster v. Landon*, 2004 WL 2496216, at \*2 (E.D. La. Nov. 4, 2004)).

## C. The Record Shows Normal Litigation Conduct, Not Bad Faith

The history of the plaintiffs' pleadings and active litigation against Sklanka is exactly the sort courts have decided is acceptable, precluding a finding of bad faith under § 1446(c)(1).

The plaintiffs' handling of the pleadings against Sklanka is evidence of good faith, not gamesmanship. The late amendment of a pleading to add a non-diverse defendant in response to an attempt to remove may, for example, be evidence of bad faith gamesmanship. See *Ehrenreich v. Black*, 994 F. Supp. 2d 284, 288 (E.D.N.Y. 2014). The plaintiffs alleged claims against Sklanka, however, from the inception of the case. *See id.* (finding no bad faith, in part, because non-diverse defendant was in case from its commencement); *Hill*, 386 F. Supp. 2d at 433 (same). In fact, the plaintiffs *added* factual allegations against Sklanka in the last-filed action and by amendment.

16

These allegations, which were based on newly discovered evidence, show only good faith efforts to pursue the case against Sklanka. *See* Part I.B. above (describing allegations against Sklanka).

The plaintiffs also actively pursued their claims against Sklanka, another strong indicator of the absence of bad faith. As with every other defendant in the case, the plaintiffs sought and obtained discovery from him. *See* Dkt. 123 & Ex. A thereto (motion requesting court permission to take discovery against defendants, including Sklanka; proposed discovery against Sklanka); Ex. H (discovery served on Sklanka); Ex. I (cover email and compliance notice regarding Sklanka's discovery responses). In April 2019, the plaintiffs prepared to take Sklanka's deposition. Exs. J, K (scheduling emails, Apr. 4, 2019email correspondence). It was *the Jones defendants'* delay of production of documents that delayed discovery as to all parties, *the Jones defendants'* motion to stay "all proceedings" that stayed the plaintiffs' pursuit of discovery against Sklanka, and the *Jones defendants*' motions for reconsideration and stay pending certiorari, that stayed matters further.

Further, the plaintiffs' decision to withdraw against Sklanka was reasonable under the circumstances. In September 2020, Sklanka's counsel withdrew their appearance following a determination that Sklanka's carrier owed him no duty to defend or indemnify. Dkts. 292, 292.20. Sklanka then entered a *pro se* appearance. In addition to noting that Sklanka now had no insurance coverage with which to pay a judgment, the plaintiffs recognized that Sklanka's *pro se* status and resulting right to attend depositions had the potential to complicate taking those depositions significantly, especially during the pandemic. This alone would have been sufficient reason to withdraw against him. *See Campbell v. United Parcel Serv., Inc.*, 2019 WL 5587349, at *3 (D.N.J. Oct. 30, 2019) (Hillman, J.) (decision to release certain defendants because plaintiffs did not want other fact witnesses to be intimidated by their presence in deposition was evidence of a lack of bad faith).

Then, in October, the Jones defendants sought to leverage Midas and Sklanka's special motions to dismiss as a basis to obtain a further stay of discovery for themselves. The trial court took this argument seriously enough to order briefing on it. Oct. 2, 2020 Order, Dkt. 296. Connecticut's newly enacted Anti-SLAPP also lent facial support to the argument, providing that "[t]he court shall stay *all* discovery upon the filing of a special motion to dismiss." Conn. Gen. Stat. § 52-196a(d) (emphasis added). The Jones defendants had already succeeded in delaying the action for years, and the resolution of Sklanka's special motion to dismiss would have required time and labor be devoted to discovery against Sklanka, a defendant apparently with limited assets and no insurance, in addition to filing an opposition brief, a hearing, and the time for determination, potentially giving the Jones defendants significantly more delay—while providing the plaintiffs no foreseeable benefit. Given all these circumstances, the plaintiffs chose to withdraw against Sklanka.

Between the October 2 status conference and October 23, when supplemental briefing would have been due, the plaintiffs took steps that would undercut the Jones defendants' argument for a stay based on Section 52-196a(d). An agreement was reached whereby Midas withdrew its special motion to dismiss without prejudice. *See* Withdrawal, Dkt. 303. The plaintiffs withdrew against Sklanka, Withdrawal, Dkt. 301, negating his special motion to dismiss. The plaintiffs advised the court of these developments on October 23, the date supplemental briefing on the stay argument had been due. *See* Memorandum, Dkt.302, Oct. 23, 2020. On October 27, the trial court denied the Jones defendants' request for a continued stay and indicated that discovery would go forward. Order, Dkt. 304.

Not only were these actions reasonable, they do not remotely resemble strategic behavior to avoid removal. Far from being filed mere days or hours after § 1446(c)(1)'s one-year deadline,

*Cruz*, 2020 WL 3430193 at *4, the plaintiffs withdrew against Sklanka roughly two and a half years after the commencement of the first-filed case. Neither have the plaintiffs ever engaged in any of the sort of procedural chicanery around the one-year deadline courts have found to constitute bad faith. *Id.* Delay by a plaintiff without evidence of specific intent to avoid removal is insufficient. *Id.* (collecting cases). And there is *no* delay by the plaintiffs here. The plaintiffs have made every effort to push forward, while the Jones defendants themselves have, time and again, engaged in "obfuscation and delay." Ex. A, *Lafferty*, 2020 WL 4248476 at *17–18 (describing the plaintiffs' motions to compel discovery and the Jones defendants' repeated motions for extensions, "blown past" deadlines, and noncompliance).

The Jones defendants contend Sklanka missed one status conference and had not yet entered another appearance, and the plaintiffs could therefore have "easily" obtained a default judgment against him. ECF 1, Notice of Removal ¶ 7. This contention ignores the record. Sklanka entered a *pro se* appearance in the case on October 19, 2020, Appearance, Oct. 19, 2020. There is no reason to believe obtaining a judgment against him would have been "easy," especially given the special latitude afforded to self-represented parties. *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156-57 (2d Cir. 2017) (noting courts' obligation to "liberally constru[e] pro se submissions" because of the "obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training"); *Salahuddin v. Harris*, 782 F.2d 1127, 1132 (2d Cir. 1986) (reversing dismissal of *pro se* litigant for obstructing discovery because although "*pro se* plaintiffs do in fact often 'frustrate the processes of litigation' . . . dismissal is justified only when they do so deliberately" (citation omitted)). In addition, Sklanka's special motion to dismiss, which had been filed by counsel, remained to be adjudicated. Even if it would have been easy and quick to obtain a default judgment

against Sklanka—and it would not have been—there was little reason to do so after his carrier had succeeded in its declaratory judgment action.

Despite the fact that it was nowhere close to the one-year removal deadline, the Jones defendants claim "Sklanka was promptly dismissed at the first reasonable time, here following a stay due to appellate practice, after the one-year window expired." ECF 1, Notice of Removal, ¶ 23. This argument again ignores the law and the facts. Section 1446(c)(1)'s one-year deadline is not tolled by a stay—it runs regardless of whether the plaintiffs could have acted sooner but for the stay. *Nocelli v. Kaiser Gypsum Co., Inc.*, 2020 WL 230890, at *6 (S.D.N.Y. Jan. 15, 2020) (holding same for bankruptcy stay and rejecting bad faith where plaintiffs first named diverse defendant in a Third Amended Complaint filed after the one-year deadline and settlement with all non-diverse defendants); *Lopez v. Trujillo*, 475 B.R. 550, 559–60 & n.9 (N.D. Tex. 2012) (observing that "an order by a state court order cannot extend the time for removal under federal law" and refusing to find that a state court stay of an action extended the time for removal) (collecting cases). Moreover, it was the Jones defendants who sought the stay. *They* moved to stay "all proceedings"—including the case against Sklanka—pending the appeal that they would lose convincingly. Jones Defs.' Mot. to Stay, Dkt. 276, July 10, 2019. And *their misconduct* was the root reason the case stalled. The appeal itself happened only because the Jones defendants had been sanctioned for engaging in a pattern of "obfuscation and delay," in addition to other bad-faith litigation misconduct. Ex. A, *Lafferty*, 2020 WL 4248476 at *17.[12]

---

[12] The Jones defendants' argument on this point also assumes that the plaintiffs' ability to withdraw against Sklanka was certainly controlled by stays continuing into September 2020, a point the plaintiffs do not accept. After all, the trial court considered and adjudicated Sklanka's counsel's motion to withdraw their appearance. Mot. to Withdraw App., Dkt. 292, Aug. 14, 2020; Order, Dkt. 292.20, Sept. 8, 2020.

The plaintiffs have not even engaged in suspicious conduct of the sort courts have found *insufficient* for bad faith under § 1446(c)(1). They did not seek repeated extensions or otherwise cause a delay that precluded removal before the one-year deadline. *See Cruz*, 2020 WL 3430193 at *4 (such conduct insufficient for finding of bad faith). The plaintiffs have not failed to provide information required for removal, let alone refused to provide it. *See Purple Eagle*, 2019 WL 493812 at *2 (such conduct insufficient for finding of bad faith); *Westmoreland v. Wawona Packaging Co., LLC,* 2016 WL 11480704 at *2 n.2 (E.D.N.Y. Nov. 7, 2016) (same), *report and recommendation adopted,* 2016 WL 7165959 (E.D.N.Y. Dec. 8, 2016); *Martinez*, 2016 WL 8711443 at *2–3 (same where defendants sought to compel production of information and sought to dismiss case based on plaintiffs' failure to provide it). In fact, just the opposite: the plaintiffs have actively prosecuted the case, while the *Jones defendants* engaged in a pattern of "obfuscation and delay." Ex. A, *Lafferty*, 2020 WL 4248476 at *17. Meanwhile, the plaintiffs' account of their decision to withdraw is not only sensible, but the *most* reasonable explanation under the circumstances, and evinces no indication of bad faith. *See Khakimova*, 2020 WL 5511537 at *3 (noting that plaintiff's provision of explanation for even suspicious conduct influences bad-faith determination "even if the plaintiff's explanation is not 'particularly compelling'" and rejecting bad faith based on plaintiff's excuse that unresponsiveness and delay attributable to "the reality of an overworked paralegal in a solo practitioner's office"). In sum, there is nothing remotely suspicious about the timing of the plaintiffs' withdrawal against Sklanka, let alone anything meeting the high standard of proof required for a finding of bad faith under § 1446(c)(1). It was a sound litigation decision given Sklanka's lack of insurance coverage and the Jones defendants' argument that discovery against them should be stayed pending resolution of his special motion to dismiss. On this basis alone, this Court must remand this case to the Connecticut Superior Court.

### D.  The Facts of this Case Do Not Remotely Resemble Cases Where Bad Faith Has Been Found

Federal courts in this circuit have found bad faith under § 1446(c)(1) only when faced with three categories of evidence showing obviously strategic behavior specifically aimed at defeating removal. The first category is "dismissing the non-diverse defendant days or hours after the one-year deadline passes" under circumstances where no other explanation is plausible. *Cruz*, 2020 WL 3430193 at *4 (citation omitted). In *In Re Rezulin Products Liab. Litig.*, 2003 WL 21355201, at *2 (S.D.N.Y. June 4, 2003), for instance, the plaintiff dismissed the non-diverse defendant only five days after the one-year anniversary of the commencement of the action, there was no other plausible reason for doing so, the plaintiffs never took any discovery from him, and plaintiffs' counsel had similarly named non-diverse physician defendants in their other cases in the same multidistrict litigation. The plaintiffs' withdrawal against Sklanka was nowhere close to the one-year deadline: it was filed roughly two and a half years after the first case was filed. *See Nocelli*, 2020 WL 230890 at *5 (remanding because plaintiffs prosecuted case for nearly two years before settlement). Further, the plaintiffs have explained the circumstances and good-faith litigation decisionmaking that led to the withdrawal.

The second category is procedural chicanery—such as "belatedly adding a defendant"—in "response to an attempted or anticipated removal." *Cruz*, 2020 WL 3430193 at *4 (citation omitted). In *Tedford v. Warner-Lambert Co.*, 327 F.3d 423, 427–28 (5th Cir. 2003), for instance, the court found that "hours after" being informed of defendant's intention to remove the case, the plaintiff joined a non-diverse defendant, then took no discovery from that defendant, created a pre-signed, post-dated dismissal of that defendant, and then refrained from filing the dismissal until after the one-year deadline had expired. Other examples of such schemes include filing multiple suits involving the same claims to keep the amount in controversy in each below the threshold for

removal, *see Manney v. Reichert*, 2014 WL 4805046, at *12 (E.D.N.Y. Sept. 26, 2014), moving plaintiffs from one case to another to defeat removal, *see Nocelli*, 2020 WL 230890 at *5 (citation omitted), voluntarily dismissing and then refiling a case in order to disguise removability until past the one-year deadline, *Thompson v. Belk, Inc.*, 2013 WL 5786587, at *3 (N.D. Ga. Oct. 28, 2013), and amending a complaint after the one-year deadline to add class allegations that rendered the case removable without plausible explanation, *Barnett v. Sylacauga Autoplex*, 973 F. Supp. 1358, 1361, 1367 (N.D. Ala. 1997).

Here, the plaintiffs have taken *no* procedural action to prevent removal before the one-year deadline, let alone an obviously strategic one like those listed here. Indeed, their complaints have not changed since November 2018—a period far longer than the one-year removal deadline. *See Ehrenreich*, 994 F. Supp. 2d at 289 (rejecting bad faith because the complaint was "unchanged for the entirety of the one-year removal period").

The only other sort of evidence found to be sufficient for bad faith is a direct admission. *See, e.g.*, *Rauch v. Rauch*, 446 F. Supp. 2d 432, 433 n.1, 435–36 (D.S.C. 2006) (granting exception where a plaintiff revealed in a tape-recorded conversation that he did not truly intend to seek recovery against the non-diverse defendant); *Forth*, 2013 WL 6096528, at *3 (uncontroverted sworn testimony that plaintiff's counsel assured non-diverse defendant, long in advance of the removal deadline, that it would be dismissed from action). Suffice it to say, there is no such evidence here.

Conduct that is not obviously aimed at defeating removal, even where suspicious, is insufficient. For instance, without specific evidence they were meant to preclude removal, a plaintiff's repeated extensions until after the one-year deadline are insufficient to find bad faith. *Cruz*, 2020 WL 3430193 at *4. Failing for over a year to provide a bill of particulars detailing

damages over the $75,000 threshold is insufficient where a defendant does not "show that plaintiff took any steps to prevent defendants from ascertaining the amount in dispute." *Purple Eagle Entm't, Inc. v. Bray*, 2019 WL 493812, at *2 (S.D.N.Y. Feb. 8, 2019); *Westmoreland*, 2016 WL 11480704, at *2 n.2 (same). This is true even where a defendant has previously sought to compel production of the claimed damages amount and moved to dismiss based on the plaintiff's failure to produce it. *See Martinez*, 2016 WL 8711443 at *2–3. Unresponsiveness alone is insufficient— the plaintiff must have taken specific acts evidencing a purpose to prevent removal. *Khakimova*, 2020 WL 5511537 at *3. There has been no delay attributable to the plaintiffs in this case whatsoever.

Courts refuse to find bad faith where there is nearly any countervailing evidence or other plausible reason for the plaintiff's actions. It does *not* establish bad faith where, as here, a non-diverse defendant was "included in the initial Complaint" and that the complaint was "unchanged for the entirety of the one-year removal period." *Hill*, 386 F. Supp. 2d at 433. Even where a plaintiff has engaged in conduct seemingly aimed at preventing removal—for instance, unresponsiveness to repeated requests for statement of the amount in controversy—"[w]hether or not the plaintiff has provided an explanation for its unresponsiveness will influence the bad faith determination." *Khakimova*, 2020 WL 5511537 at *3. "This is true even if the plaintiff's explanation is not 'particularly compelling.'" *Id.* (citation omitted); *Marin*, 2020 WL 3999711, at *7 (noting same and rejecting bad faith because plaintiff excused suspicious actions by having "an incompetent and neglectful attorney"). Again, here the record does not show *any* delaying conduct by the plaintiffs intended to prevent removal by running out the one-year removal period.

The Jones defendants come nowhere near clearing the high bar of showing the plaintiffs acted in bad faith. They provide *no* instance of *any* strategic action by the plaintiffs to avoid

removal. They cannot: the plaintiffs have taken none. Certainly, there is no evidence of "nefarious conduct" or that the plaintiffs "obscure[ed] facts that would otherwise justify removal." *Caires*, 2017 WL 3891663 at *3. Indeed, this case bears literally none of the indicia previously found sufficient for bad faith. The plaintiffs' active litigation and robust allegations against Sklanka further preclude such a finding. At bottom, the Jones defendants' argument is that a withdrawal against a non-diverse defendant at *any* time after the one-year removal deadline presumptively constitutes bad faith. This is manifestly not the law. The removal is untimely, and the Court must remand these cases to Connecticut Superior Court.

### E.  The Case's Progress in State Court Further Militates Against Removal

Congress's purpose in creating § 1446(c)(1)'s one-year time limit for removal was to "reduc[e] the opportunity for removal after substantial progress has been made in state court." *Hill*, 386 F. Supp. 2d at 431 (quoting H.R. Rep. No. 100–889, at 72 (1988)). This consideration, derived from "the systemic interest in efficiency and respect for the state courts . . . militates against removal after 'substantial progress' has been made in the state forum[.]" *Id.*

This factor applies in spades here. This case has been litigated in multiple levels of the Connecticut state courts. Both a Connecticut Superior Court judge and the Connecticut Supreme Court are now familiar with the case. There have been hundreds of pages of briefing, numerous hearings and discovery conferences, and sanctions ordered and affirmed for the Jones defendants' discovery-related and other misconduct. Now, after the case has finally advanced to full discovery, the Jones defendants once again seek to have the case removed to federal court. As previously discussed, this request is already baseless under § 1446(c)(1). But acceding to it – and thereby requiring the case to start all over in federal court – would also be profoundly disrespectful to the

Connecticut state courts and offensive to any notion of judicial economy. This fact provides yet another concern further militating against removal. *See Hill*, 386 F. Supp. 2d at 431.

### F.  The Bad Faith Exception's Equitable Nature Further Counsels Against Removal

Courts in this circuit have generally treated § 1446(c)(1)'s bad faith standard as a codification of the equitable exception that preexisted the 2011 amendment. *See Ehrenreich*, 994 F. Supp. 2d at 288 (noting that courts in this circuit had equitably excused one-year removal and that "the intent behind § 1446(c)(1) was to clarify ambiguity in the case law concerning whether the one-year limitation in § 1446(c)(1) was jurisdictional or procedural" (citing H.R. Rep. No. 112-10 at 15)).

This principle has two ramifications. First, as is clear from the cases, pre-2011 cases on bad faith are relevant. The second: if the exception is equitable, then the defendants' behavior, as well as the plaintiffs', is relevant to whether they receive it. *See Namey v. Malcolm*, 534 F. Supp. 2d 494 (M.D. Pa. 2008) (even if equitable exception appropriate, equities did not weigh in favor of removal where plaintiffs did not engage in forum manipulation and the record indicated that the defendants were partly responsible for the delay in proceedings in state court); *Martinez*, 2016 WL 8711443 at *3 (removal under § 1446(c)(1) inappropriate where defendant did not vigorously pursue required information up to one-year deadline); *Cruz*, 2020 WL 3430193 at *4 (same where defendant did not oppose complained-of extensions); *Williams v. EAN Holdings, LLC*, 2020 WL 1685359, at *3 (E.D.N.Y. Apr. 7, 2020) (Garaufis, J.) (noting "courts take into account whether a defendant took any steps to ascertain" information necessary to removal withheld by plaintiff (citing *Purple Eagle Entm't Inc.*, 2018 WL 7968909, at *3)). Here, the defendants repeatedly engaged in bad faith delaying and other misconduct. *See infra* Part IV. Equity therefore further counsels against granting the Jones defendants' attempt at removal.

For all these reasons, remand is required.

## III.  REMAND IS REQUIRED BECAUSE THE UNANIMITY RULE IS NOT SATISFIED

It is "well-settled precedent in the Second Circuit" that courts "strictly enforc[e] the 'unanimity rule' in removal cases." *Nat'l Waste Assocs., LLC,* 2010 WL 1931031, at *3. The "Second Circuit has explicitly held that 'all the defendants must join in seeking removal.'" *Id.* (citing *Bradford v. Harding,* 284 F.3d 307, 309 (2d Cir. 1960) and quoting and collecting district-court cases). If they do not, "it is . . . well settled in this jurisdiction that . . . the petition is defective and the case must be remanded." *Id.* (quoting *Forum Insurance Company v. Texarkoma Crude and Gas Co.,* 1993 WL 228023, at *2 (S.D.N.Y. June 22, 1993) (Haight, J.)).

The rule of unanimity applies "regardless of whether federal subject matter jurisdiction is based on diversity or federal question." *Edelman v. Page*, 535 F. Supp. 2d 290, 293 (D. Conn. Jan. 31, 2008) (Squatrito, J.) (citation omitted); *Bradford*, 284 F.2d at 309 (same). "Although '[d]efects in removal procedure, including lack of timeliness, are not jurisdictional,' the 'statutory time limit is mandatory[.]'" *U.S. Bank Tr., N.A. for Wells Fargo Asset Sec. Corp. v. Walbert*, 2017 WL 3578553, at *4 (D. Conn. Aug. 18, 2017) (Haight, J.) (quoting *Edelman,* 535 F. Supp. 2d at 292). "[A]bsent a finding of waiver or estoppel, federal courts rigorously enforce the statute's thirty-day filing requirement." *Id.*

Moreover, the form in which all defendants join the petition is limited and strictly interpreted: it must be written, unambiguous, and timely, or the petition is defective and the case must be remanded. "[C]onsent communicated among the defendants is insufficient" to satisfy the rule. *Nat'l Waste Assocs., LLC*, 2010 WL 1931031 at *3 (quoting *Berrios v. Our Lady of Mercy Med. Ctr.*, 1999 WL 92269, at *2 (S.D.N.Y. Feb. 19, 1999) (Cote, J.)). Rather, "each defendant must file some form of unambiguous written consent within the requisite thirty days." *Id.*

(collecting cases); *Edelman*, 535 F. Supp. 2d at 295 (holding that emails between defense counsel timely agreeing to removal were "insufficient" to save petition from procedural defectiveness and remand under § 1446(b) because they were not filed with the court). If these requirements are not satisfied, the removal petition is procedurally defective and must be remanded. *Id.* (citing *Payne v. Overhead Door Corp.,* 172 F. Supp. 2d 475, 477 (S.D.N.Y. 2001) (McMahon, J.) (remanding despite briefs by all defendants in support of removal because briefs were not all filed within requisite 30 days).

The defendants have not filed unambiguous written consents to this removal and the 30 days to do so have passed. First, the Jones defendants filed no written documentation whatsoever of consent to this 2020 removal of the three consolidated cases. The written consents they attach as Compound Exhibit 3 to the Notice of Removal are consents to the already-rejected 2018 removal. Consent to the 2018 removal is not consent to this removal – the first removal was rejected for lack of diversity jurisdiction two years ago, time has passed and the case is in a different procedural posture. And consent to the 2018 removal is certainly not "unambiguous written consent" to this 2020 removal. *See Nat'l Waste Assocs.*, *LLC*, 2010 WL 1931031 at *3 ("each defendant must file some form of unambiguous written consent within the requisite thirty days."). Remand is required because the removal petition fails to satisfy the unanimity rule. The thirty days to remove, moreover, have elapsed; the failure to provide the required documentation of consent cannot be cured.

The Jones defendants' representations on this issue are not merely insufficient. They are also inaccurate and misleading. The Jones defendants represent that "Defendants Halbig, Midas Resources, and Genesis Communications Network, have all consented to *this* removal." ECF 1, Not. of Removal ¶ 25 (emphasis supplied). They also represent that these defendants "have advised

28

the Infowars Defendants that the consents have not been withdrawn and apply to all three cases being contemporaneously removed." *Id.* Counsel of record for defendant Halbig, Attorney Jonathan Beatty, avers that he was never consulted concerning the Jones defendants' recent notices of removal; he has never communicated his client's consent to the Jones defendants' counsel regarding this removal; and to the best of his knowledge, his client does *not* consent to removal.; Ex. B, Beatty Aff ¶¶ 4-6. Counsel of record for Midas indicated by email that "[t]his office was not asked whether we consented to the removal. However, if asked we would have consented." Ex. C, Brown Email.[13] If defendants intended to argue that they were relying on the 2018 consents for the 2020 removal, they should have said so clearly, but they did not. In sum, it appears the Jones defendants' counsel has made misleading and inaccurate statements concerning consent.

## IV.   THE COURT SHOULD AWARD FEES AND COSTS PURSUANT TO 28 U.S.C. § 1447(c)

This removal has no objectively reasonable basis. Far from being a legitimate procedural move, it is the latest episode in their long history of "obfuscation and delay" and "bad faith litigation misconduct." Ex. A, *Lafferty,* 2020 WL 4248476, at *17-*18. The Jones defendants have no record support to assert the plaintiffs engaged in the kind of bad faith conduct required to secure a tolling of the one-year deadline under Section 1446(c)(1); they failed to satisfy the rule of unanimity; and their representations in support of consent are at best misleading and at worst false. For these reasons, the Court should award costs and attorney's fees under § 1447(c).

Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." *Bank of New York v. Consiglio*, 2017 WL 4948069, at *5 (D. Conn. Nov. 1, 2017) (Haight, J.) (awarding

---

[13] Genesis is unrepresented by counsel. Plaintiffs' counsel have not obtained information from Genesis' principals regarding whether Genesis was contacted or not.

removal fees for removal attempted under § 1446(c)(1)). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). However, "[s]uch an award may be made without a showing of bad faith or frivolity, and deciding whether to make the award requires consideration of the overall nature of the case, circumstances of the remand, and effect on the parties." *Consiglio*, 2017 WL 4948069 at *5 (citing *Morgan Guar. Trust Co. v. Republic of Palau*, 971 F.2d 917, 923–24 (2d Cir. 1992)).

Attorney's fees are appropriate here. The Jones defendants had no objectively reasonable basis for seeking removal. In considering whether to award attorney's fees for their previous failed removal, this Court concluded they had "a basis, albeit thin, upon which to seek removal." *Lafferty*, 2018 WL 5793791 at *6. This time, they lack even this fig leaf. Bad faith under § 1446(c)(1) requires specific evidence of a bad faith effort to prevent removal. The Jones defendants produce no evidence of bad faith at all.

We have pointed out throughout this brief that the record shows normal litigation conduct on the part of the plaintiffs; the record provides no support for a finding of bad faith under the applicable legal standards. In an attempt to gloss over these deficiencies, the Jones defendants mispresent the legal standard and caselaw in their Notice of Removal. They claim that "bad faith 'may be overt or may consist of inaction . . . [such as] lack of diligence and slacking off.'" ECF 1, Notice of Removal ¶ 21. In support of this contention they cite *Bank of China v. Chan*, 937 F.2d 780, 789 (2d Cir. 1991) (quoting Restatement (Second) of Contracts, §205, comment d). But *Bank of China* did not consider "bad faith" in the context of an untimely removal petition; rather, it addressed a claim for a breach of the implied covenant of good faith and fair dealing and "bad faith" in performance of a contract. *Id*. The *Bank of China* test for bad faith is inapplicable in the

§ 1446(c)(1) context. *See Purple Eagle Entm't*, 2019 WL 493812 at *2 (holding inaction insufficient for bad faith under § 1446(c)(1)); *Westmoreland*, 2016 WL 11480704 at *2 n.2 (same); *Martinez*, 2016 WL 8711443 at *2-3 (same); *Cruz*, 2020 WL 3430193 at *4 (same).

The Jones defendants also fail to cite any of the half-dozen or so cases in this circuit describing the bad-faith standard as requiring "nefarious conduct that aims to defeat an opponent's right to remove." *Caires*, 2017 WL 3891663, at *3; *Cruz*, 2020 WL 3430193 at *4 ("[E]ven where delay in defendants' removal could be traced to [the] plaintiff's actions, courts have declined to excuse an untimely removal where [the] plaintiff's actions did not evince a specific desire to prevent removal."). Just like the defendants in *Consiglio* and *Walbert*, the Jones defendants' "failure to address the governing law is consistent with a willingness . . . to needlessly consume the time of this Court and the energies of opposing counsel." *Consiglio*, 2017 WL 4948069 at *5 (awarding fees on this basis); *Walbert*, 2017 WL 3578553 at *5 (same). [14]

This removal is the latest episode in a long train of bad-faith litigation misconduct—a fact that this Court should consider when deciding whether to award costs and fees. The trial court found (and the Connecticut Supreme Court agreed) that "the discovery in this case has been marked with obfuscation and delay on the part of the [Jones] defendants," noting they had

---

[14] The only case in this circuit the plaintiffs could find mentioning the *Bank of China* formulation for bad faith in reference to § 1446(c)(1) bad faith is *Forth*, 2013 WL 6096528 at *3. As described above, *Forth* does not reflect the consensus of the courts. Neither is it a fair recitation of the standard applied even in that case: the district court noted that "the standard for bad faith is stringent and must be supported by clear and convincing evidence." *Id.* at *2. The "slacking off" description was relevant to rebutting one of the plaintiffs' justifications for delay. *Id.* at *3. The non-diverse defendant there had testified that plaintiffs' counsel had assured it, long in advance of the removal deadline, that it would be dismissed from action. *Id.* The plaintiffs claimed they had then kept the non-diverse defendant in the case after the removal deadline because they needed more discovery—but they had never actually sought it. *Id.* Under these circumstances, the district court found in *Forth*, the plaintiff's "inaction" and "slacking off" on discovery was evidence of bad faith. *Id.*

"disregarded discovery deadlines on multiple occasions, continue[d] to object to. . . discovery" already ordered, "and failed to produce that which is within their knowledge, possession, or power to obtain." Ex. A, *Lafferty*, 2020 WL 4248476 at *17 (internal quotation marks omitted). The Connecticut Supreme Court found that Jones' actions created "a whole picture of bad faith litigation misconduct." *Id.* at *18. Since the case returned to the trial court and regular discovery opened, the Jones defendants have continued their strategy of obstruction and delay. In the last minutes before midnight, on the eve of facing a trial court order to submit to more discovery – and the prospect of the case progressing after more than a year of delay – they filed for removal. They are banking that adjudicating this motion will buy them a month or two. This Court should act to deter such abuses and award the plaintiffs just costs and actual expenses, including attorney's fees, under 28 U.S.C. § 1447(c).

## V.    CONCLUSION

For the foregoing reasons, this Court must remand this case to the Connecticut Superior Court and should order the award of just costs, expenses, and attorney's fees for removal to the plaintiffs.

**RESPECTFULLY SUBMITTED**,

By: */s/ Alinor C. Sterling*
Alinor C. Sterling, ct17207
Christopher M. Mattei, ct27500
Matthew S. Blumenthal, ct30448
Koskoff Koskoff & Bieder, PC
350 Fairfield Avenue
Bridgeport, CT 06604
TEL:  203-336-4421
FAX: 203-368-3244
asterling@koskoff.com
cmattei@koskoff.com
mblumenthal@koskoff.com
*Attorneys for Plaintiffs*