## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ERICA LAFFERTY, et al. | : | CIVIL CASE NO. |
| Plaintiffs, | : | 3:20-cv-1723 (JCH) |
| | : | |
| v. | : | |
| | : | |
| ALEX JONES, et al., | : | |
| Defendants. | : | MARCH 5, 2021 |
| | : | |
| | : | |

### RULING ON MOTION TO REMAND (DOC. NO. 27), CROSS-MOTION FOR JURISDICTIONAL DISCOVERY (DOC. NO. 33), AND MOTION FOR SANCTIONS (DOC. NO. 19)

## I.    INTRODUCTION

Plaintiffs, family members of children and adults killed during the December 2012 shooting at Sandy Hook Elementary School in Newtown, Connecticut, have moved for an order remanding the case to the Superior Court of Connecticut and awarding costs and attorneys' fees.  See Pls.' Mot. to Remand ("Pls.' Mot.") (Doc. No. 27).  A group of the defendants--Alex Emric Jones ("Jones"), Infowars, LLC; Free Speech Systems, LLC; Infowars Health, LLC; and Prison Planet TV, LLC (collectively, the "Infowars Defendants")--oppose this Motion and have filed a Cross-Motion for Jurisdictional Discovery.  See Defs.' Opp'n to Mot. to Remand and Cross-Mot. for Jurisdictional Disc. ("Defs.' Cross-Mot.") (Doc. No. 33).  Also pending are the Infowars Defendants' Motion for Transfer to Another District (Doc. No. 18), Motion for Sanctions (Doc. No. 19), and Motion for Attorney Marc J. Randazza To Be Admitted Pro Hac Vice (Doc. No. 20).

For the reasons stated below, the court denies the Infowars Defendants' Cross-Motion for Jurisdictional Discovery, grants the plaintiffs' Motion to Remand, denies' the

plaintiffs' request for costs and attorneys' fees, denies the Infowars Defendants' Motion

for Sanctions, and terminates as moot the Infowars Defendants' Motion for Transfer to

Another District and Motion for Attorney Marc J. Randazza To Be Admitted <u>Pro</u> <u>Hac</u>

<u>Vice</u>.  The case is remanded to the Superior Court of Connecticut.

## II.    BACKGROUND

      A.    <u>Prior Remand Ruling</u>

      On November 5, 2018, the court issued a Ruling ordering a remand in

connection with the same state action involved here.  <u>Lafferty v. Jones</u>, No. 3:18-CV-

1156 (JCH), 2018 WL 5793791, at *1 (D. Con.. Nov. 5, 2018).  As detailed in that

Ruling, the plaintiffs had filed suit, in the Superior Court of Connecticut, on May 23,

2018, asserting several claims under Connecticut law.  <u>Id.</u> at *1, *4.  The only non-

diverse defendant, for the purposes of diversity jurisdiction under section 1332 of title 18

of the U.S. Code, was Cory Sklanska.  <u>See</u> <u>id.</u> at *1.

      The defendants first filed a Notice of Removal on July 13, 2018.  <u>Id.</u>  In support of

this Notice, the defendants argued that the "plaintiffs' 'sole purpose' in naming Sklanska

as a defendant was to 'attempt to break diversity,' and that 'there is no possibility, based

on the pleadings, that [plaintiffs could] state a cause of action against Mr. Sklanska.'"

<u>Id.</u> (citations omitted).  The plaintiffs alleged, <u>inter</u> <u>alia</u>, "that Sklanska 'acted as

[defendant] Halbig's driver [and] camera operator, helped Halbig operate his website,

and co-hosted a broadcast asserting that the Sandy Hook shooting was a hoax."  <u>Id.</u> at

*3 (citation omitted).

      The court concluded "that the defendants [ ] failed to meet their burden of

showing, by clear and convincing evidence, that the plaintiffs could not possibly raise

2

any claim in state court against Sklanska." Id. at *6.  Therefore, the court granted the
plaintiffs' then-pending Motion to Remand the case to the Superior Court of
Connecticut.  Id.  However, the court denied the plaintiffs' request for costs and
attorneys' fees, explaining that "the defendants had a basis, albeit thin, upon which to
seek removal." Id.

     B.    Proceedings on Remand

     Following the court's prior Ruling remanding the case to the Superior Court of
Connecticut, the defendants filed Special Motions to Dismiss pursuant to section 52-
196a(b) of the Connecticut General Statues, the state's "anti-SLAPP statute." Lafferty
v. Jones, No. SC 20327, 2020 WL 4248476, at *2 (Conn. July 23, 2020), pet. for
certiorari docketed Feb. 19, 2021.  That provision states that, "[i]n any civil action in
which a party files a complaint . . . that is based on the opposing party's exercise of its
right of free speech, right to petition the government, or right of association . . . such
opposing party may file a special motion to dismiss the complaint."  Conn. Gen. Stat. §
52-196a(b).  The filing of a special motion to dismiss triggers an automatic stay of all
discovery, except that a court "may order specified and limited discovery relevant to the
special motion to dismiss," upon a finding of good cause.  Id. § 52-196a(d).

     After the defendants filed their Special Motions to Dismiss, the plaintiffs moved
for limited discovery.  Lafferty, 2020 WL 4248476, at *2.  The state trial court, at a
hearing on December 17, 2018, determined that there was good cause for limited
discovery, though the court "narrow[ed] the plaintiffs' requests."  Id.  The state court
gave the defendants until February 23, 2019, to produce this limited discovery.  Id.  The
Infowars Defendants did not meet this deadline, and, after the state court granted an

extension of the deadline until March 20, 2019, the defendants again failed to meet the new deadline.  Id. at *2-3.  The state court observed that the Infowars Defendants had "blown past the court's deadlines," and that "[t]here hasn't been a single piece of paper [produced] or interrogatory answered."[1]  Id. at *3.

In response, the plaintiffs moved for sanctions.[2]  Id.  On April 10, 2019, following argument, the state court concluded that, "although [the defendants] had not complied with every discovery request, the production to that point was sufficient to allow them to pursue the merits of the special motions to dismiss."  Id.

The plaintiff sought additional limited discovery in May 2019.  Id.  The state court granted this request, while warning the defendants that it would consider imposing sanctions in the event of noncompliance.  Id.

On June 14, 2019, defendant Jones appeared together with Attorney Norman A. Pattis on Jones's radio broadcast.[3]  Id. at *3.  As recounted by the Supreme Court of Connecticut, "Jones explained to the broadcast audience that someone had embedded child pornography in e-mails turned over to the plaintiffs in discovery" and "then began a long invective against those whom he believed had planted the child photography."  Id.  During this invective, Jones repeatedly identified plaintiffs' counsel by name, displayed

---

[1] In contrast, by this time, Sklanska had provided initial and supplemental responses to the plaintiffs' First Set of Special Interrogatories and Requests for Production.  See Ex I. to Pls.' Mem. (Doc. No. 27-11) at 2-6.

[2] Additionally, the plaintiffs communicated to Sklanska's counsel that they would be postponing Sklanska's deposition, which had been scheduled for April 12, 2019, "in light of the litigation around the Jones Defendants' non-compliance."  See Ex. K. to Pls.' Mem. (Doc. No. 27-13) at 2.

[3] The court notes that, by this point in the proceedings, a year had passed since the plaintiff's filing of their initial Complaint in state court.  See Lafferty, 2018 WL 5793791, at *4.

4

a photograph of plaintiffs' counsel, and declared that "one million [dollars] is on the street for who sent me [the child pornography]." Id. at *4-6.

On June 17, 2019, the plaintiffs moved for sanctions. Id. at *5. The next day, the state court held a hearing and imposed sanctions, including revocation of the Infowars Defendants' ability to pursue their Special Motion to Dismiss, which effectively operated as a dismissal of the Infowars Defendants' Special Motion to Dismiss without addressing the merits of that Motion. See id. at *6. The Infowars Defendants then filed a public interest appeal, directly from the trial court to the Supreme Court of Connecticut. See id. at *1.

The Supreme Court of Connecticut agreed to hear the appeal and address whether the sanctions violated the Infowars Defendants' rights under the First Amendment, whether the trial court abused its discretion by imposing sanctions, and whether the Infowars Defendants were afforded adequate notice and a meaningful opportunity to be heard. Id. at *6. On July 23, 2020, the Supreme Court of Connecticut issued an opinion in which it ruled against the Infowars Defendants on all three issues, affirming the sanctions orders in full. Id. at *6-22. In reaching these conclusions, the Supreme Court of Connecticut noted, inter alia, that it was "undisputed that the trial court's discovery orders were reasonably clear and that the defendants violated four of them." Id. at *17.

The sanctions orders, however, left the identical Special Motions to Dismiss filed by defendants Sklanska and Midas Resources ("Midas") pending. See Lafferty v. Jones, No. UWY-CV18-6046436-S, Defs.' Reply Br. in Supp. of Continued Stay, No. 300 (Conn. Super. Ct. Oct. 23, 2020), at 3. With the case again before the state trial court,

5

the Infowars Defendants argued that, because section 52-196a(d) mandates that "[t]he court shall stay all discovery upon the filing of a special motion to dismiss," discovery should be stayed as to all defendants, so long as any defendant's Special Motion to Dismiss remained pending.  Id. (quoting Conn. Gen. Stat. § 52-196a(d)) (emphasis omitted).

Roughly a month earlier, on September 8, 2020, the state trial court had granted Sklanska's counsel's Motion to Withdraw Appearance, on account of a declaratory judgment indicating that Sklanska's insurance carrier was not obligated to provide coverage or representation in connection with the case.  See Lafferty, No. UWY-CV18-6046436-S, Order, No. 292.20 (Sept. 8, 2020); id., Mot. to Withdraw Appearance, No. 292 (Aug. 14, 2020).  On October 26, 2020, the plaintiffs voluntarily dismissed Sklanska from the case, see Lafferty, No. UWY-CV18-6046436-S, Withdrawal, No. 301 (Oct. 26, 2020), and Midas withdrew its Special Motion to Dismiss without prejudice to refiling, see id., No. 303 (Oct. 26, 2020).  Subsequently, on October 27, 2020, the state trial court denied the Infowars Defendants' request that the stay of discovery be continued, "in light of the fact that there are no remaining special motions to dismiss pending." Lafferty, No. UWY-CV18-6046436-S, Order, No. 304 (Oct. 27, 2020).

On November 17, 2020, the Infowars Defendants filed their second Notice of Removal.  See Notice of Removal (the "2020 Notice") (Doc. No. 1).  Three days later, the Infowars Defendants moved for sanctions, in connection with a statement given by plaintiffs' counsel to a news organization.  See Mot. for Sanctions (Doc. No. 19); Mem. in Supp. of Mot. for Sanctions ("Infowars Defs.' Sanctions Mem.") (Doc. No. 19-1) at 1.

The statement, which was published on November 18, 2020, and attributed to plaintiffs'

counsel, is reproduced below.

> The families brought this case more than two years ago to hold Alex Jones
> responsible for his abusive claims.  On the eve of being ordered to make both his
> accountant and executive assistant available for deposition, he filed a motion just
> a few minutes before midnight last night seeking to delay the process by moving
> the entire case to federal court, a known stalling tactic that Sandy Hook families
> have seen and defeated before in other high-profile cases.  Alex Jones is terrified
> that the depositions will reveal the truth about him and his business practices.
> Every attempt to delay justice only strengthens the result of the Sandy Hook
> families.

Infowars Defs.' Sanctions Mem. at 1 (quoting Rob Ryser, Sandy Hook Families Accuse

Alex Jones of Delay Tactic in Defamation Lawsuit, NEWS-TIMES (Nov. 18, 2020),

https://www.newstimes.com/news/article/Sandy-Hook-families-accuse-Alex-Jones-of-

delay-15736411.php)).

On December 2, 2020, the plaintiffs filed a Motion to Remand the case to the

Superior Court of Connecticut.  See Pls.' Mot.

## III.    STANDARD OF REVIEW

Section 1447(c) permits a party to file a "[m]otion to remand the case on the

basis of any defect other than lack of subject matter jurisdiction . . . within 30 days after

the filing of the notice of removal."  28 U.S.C. § 1447(c).  Defendants bear the burden of

proving that removal is proper.  See O'Donnell v. AXA Equitable Life Ins. Co., 887 F.3d

124, 128 (2d Cir. 2018) (citation omitted).  The Supreme Court has instructed that

"statutory procedures for removal are to be strictly construed."  Syngenta Crop Prot.,

Inc. v. Henson, 537 U.S. 28, 32 (2002) (citations omitted).

## IV.    DISCUSSION

A.    Consent to Removal

7

The plaintiffs contend that the court must remand the case, because not all of the defendants consented to removal in writing within 30 days of the filing of the 2020 Notice of Removal.  Section 1446(b)(2)(A) mandates that "all defendants who have been properly joined and served must join in or consent to the removal of [an] action." 28 U.S.C. § 1446(b)(2)(A).  Section 1446(b)(2)(B) imposes a 30-day deadline, specifying that "[e]ach defendant shall have 30 days after receipt by or service on that defendant of the initial pleading or summons . . . to file the notice of removal." Id. § 1446(b)(2)(B).  Finally, section 1446(b)(2)(C) provides that, "[i]f defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal."  Id. § 1446(b)(2)(C).

Prior to December 2011, section 1446 did not expressly address circumstances in which defendants were served at different times.  See Pietrangelo v. Alvas Corp., 686 F.3d 62, 64-65 (2d Cir. 2012).  A circuit split emerged over competing interpretations of section 1446(b)'s 30-day deadline for consenting to removal: the "first-served rule" and the "later-served rule."  See id.  In Pietrangelo v. Alvas Corp., the Second Circuit adopted the later-served rule, which is the approach now codified in the post-2011 version of the statute.  Id.

In the course of deciding whether to follow the first-served rule or later-served rule, the Second Circuit briefly discussed the manner by which a defendant must consent under section 1446.  Some of the defendants and Pietrangelo had expressed their consent to removal by submitting letters to the district court, within the 30-day deadline.  Id. at 66.  The district court had treated the letters as timely and adequate

indications of consent, despite the letters' noncompliance with a formatting requirement set out in a local rule.  Id.  While observing that "[d]istrict courts within this Circuit . . . have consistently interpreted [section 1446] as requiring that all defendants consent to removal within the statutory thirty-day period, a requirement known as the rule of unanimity," the Second Circuit cautioned that it had "not yet advised what form a consent to removal must take."  Id. (citation and internal quotation marks omitted).  The Second Circuit then stated that it "agree[d] with the district court that the remaining defendants must independently express their consent to removal."  Id.  Accordingly, the Second Circuit held that the letters submitted to the district court met this requirement. Id.

Here, the Infowars Defendants filed the 2020 Notice of Removal on November 17, 2020.  See 2020 Notice.  The 2020 Notice is signed by counsel for the Infowars Defendants only and states that "the Infowars Defendants . . . remove this action."  Id. Attached as Exhibit 3 to the 2020 Notice are Consents to Removal signed by the other remaining defendants and dated July 10 and 11, 2018.  Ex. 3 to 2020 Notice (Doc. No. 1-3).  Additionally, the Infowars Defendants represent in this Notice of Removal that "[t]he remaining defendants . . . have all consented to this removal," that "[t]hey did so in advance of the prior removal," and that "[t]hey have advised the Infowars Defendants that the consents have not been withdrawn and apply to all three cases being contemporaneously removed."  Notice of Removal ¶ 25.

As an initial matter, the court concludes that the Infowars Defendants' representations in the 2020 Notice regarding the other defendants' consents are insufficient to support removal under section 1446(b).  As the Second Circuit explained

9

in Pietrangelo, "defendants must independently express their consent to removal."  686 F.3d at 66 (emphasis added).  Thus, the sole issue is whether the other defendants' written consents to the Notice of Removal filed in July 2018 ("the 2018 Notice") satisfy the consent requirement of section 1446(b) for the purposes of the 2020 Notice.

The plaintiffs argue that consents filed in connection with the 2018 Notice cannot support the 2020 Notice because "the first removal was rejected for lack of diversity jurisdiction two years ago, time has passed and the case is in a different procedural posture."  Pl.'s Mem. at 28.  The plaintiffs also represent that they contacted counsel of record for defendants Halbig and Midas and were told that the Infowars Defendants did not consult with those counsel regarding whether defendants Halbig and Midas consented to the 2020 Notice.  Id. at 28-29.  The plaintiffs submitted an Affidavit from counsel for Halbig representing that, "[t]o the best of [counsel's] knowledge and understanding, Wolfgang Halbig does not consent to the [2020] removal."  Ex. B. to Pls.' Mem. (Doc. No. 27-4) ¶ 6.

The Infowars Defendants counter that section 1446 "does not say that there must be a temporal nexus between consent and removal, so long as consent is given before the deadline to remove expires," and that the "[c]onsents in 2018 were well before the 2020 deadline expired."  Infowars Defs.' Cross-Mot. at 6.  Additionally, they represent that the remaining defendants verbally reaffirmed their consent to removal in communications with the Infowars Defendants, and they request discovery to "confirm the validity of their consents to removal."  Id. at 6-8.  Neither the plaintiffs nor the Infowars Defendants cite a case directly on point, and the court has not been able to identify a published decision discussing whether consent to a prior notice of removal

10

satisfies section 1446(b)'s consent requirement, for the purposes of a later filed notice of removal.

The Second Circuit has repeatedly observed that, "[i]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." Platinum-Montaur Life Sciences, LLC v. Navidea Biopharmaceuticals, Inc., 943 F.3d 613, 617 (2d Cir. 2019) (quoting Somlyo v. J. Lu-Rob Enters., Inc., 932 F.2d 1043, 1045-46 (2d Cir. 1991), superseded by rule on other grounds as recognized by Contino v. United States, 535 F.3d 124, 127 (2d Cir. 2008)).  As noted above, section 1446(b) requires all defendants to "join in or consent to the removal of [an] action," imposes a 30-day deadline for joining in or consent to removal, and allows that, "[i]f defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal."  18 U.S.C. § 1446(b)(2)(C).  This 30-day deadline and codification of the later-served rule evidence the removal statute's focus on the period of time immediately surrounding the filing of a notice of removal.  To the extent that the statutory text allows a small degree of ambiguity on this issue, the court concludes that the Second Circuit's direction to "resolv[e] any doubts against removability," Platinum-Montaur Life Sciences, 943 F.3d at 617 (citation omitted), obligates the court to construe section 1446(b) as applying to each attempt at removal.

Additionally, the parties' disagreement over whether every defendant in fact wishes to have the case removed for a second time illustrates the conflict between the

Infowars Defendants' proposed interpretation of section 1446(b) and the Second Circuit's approach to the removal statute. Even accepting as true the Infowars Defendants' representations that Halbig and Midas verbally indicated their consent to the 2020 Notice, the plaintiffs' argument on this issue underscores the possibility that a defendant in a given case might consent to an earlier attempt at removal and withhold consent from a later attempt.

A defendant might, for example, be pleased with the course of proceedings in state court following an initial remand and decide that removal is no longer to its strategic advantage. Further, section 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Thus, a defendant might prefer to litigate in federal court following an initial removal and remand, yet withhold consent to a second attempt at removal, on account of the risk of an order requiring payment of costs and fees. Similarly, a defendant might withhold consent on account of a determination that legal arguments in favor a second attempt at removal are frivolous and would expose that party and/or its counsel to sanctions under Rule 11. See Fed. R. Civ. P. 11(b)(2). As discussed above, the Second Circuit has held that all "defendants must independently express their consent to removal," Pietrangelo, 686 F.3d at 66. Given this holding, and given the potential circumstances outlined above, this court doubts that the Second Circuit would interpret section 1446 as permitting a defendant's written consent to an earlier attempt at removal to carry over to a later attempt at removal.

12

Therefore, the court concludes that section 1446(b) obligates the court to enter

an order remanding this case.  The court also determines that the Infowars Defendants

have not shown good cause for discovery on this issue.[4]  See Malibu Media, LLC v.

Doe, No. 3:19-CV-808 (CSH), 2019 WL 2537671, at *1 (D. Conn. June 20, 2019)

(observing that "courts apply a flexible standard of reasonableness and good cause"

when determining whether early discovery under Federal Rule of Civil Procedure

26(d)(1) is warranted (internal quotation marks and other citations omitted)).

Recognizing, however, that this consent issue is novel, the court will also address the

plaintiffs' second argument in favor of a remand.

B.      Bad-Faith Exception to the One-Year Deadline for Removal

The plaintiffs also argue that the 2020 Notice of Removal is untimely.  Section

1446(c) provides that "[a] case may not be removed . . . on the basis of [diversity]

jurisdiction . . . more than 1 year after commencement of the action, unless the district

court finds that the plaintiff has acted in bad faith in order to prevent the defendant from

removing the action."  28 U.S.C. § 1446(c)(1).  "Although the Second Circuit has not yet

had occasion to interpret the scope of the 'bad faith' exception . . . [district] courts in this

Circuit ha[ve] granted [ ] extensions of the one-year removal period in cases where the

plaintiff has engaged in strategic gamesmanship to prevent a defendant's removal from

state court."  See Nocelli v. Kaiser Gypsum Co., Inc., No. 19-CV-1980 (RA), 2020 WL

---

[4] Although the Infowars Defendants labeled their Cross-Motion as a "Cross-Motion for
Jurisdictional Discovery", they acknowledge in their Reply that their discovery requests pertain to
procedural--as opposed to jurisdictional--issues.  See Infowars Defs.' Reply at 1.  Nevertheless, citing
Federal Rule of Procedure 26(d)(1), they contend that this distinction should not affect the court's
analysis, because, according to the Infowars Defendants, a "good cause" standard applies to their
requests, whether construed as pertaining to jurisdictional or procedural issues.  See id. at 1-2.

230890, at *5 (S.D.N.Y. Jan. 15, 2020) (quoting Ehrenreich v. Black, 994 F. Supp. 2d 284, 288 (E.D.N.Y. 2014)).

The Infowars Defendants contend that the plaintiffs' voluntary dismissal of Sklanska as a defendant demonstrates gamesmanship sufficient to trigger section 1446(c)(1)'s bad-faith exception.  It was Sklanska's inclusion in the case, as the only non-diverse defendant, that the Infowars Defendants previously challenged as fraudulent.  See Lafferty, 2018 WL 5783791, at *1.  As recounted above, the court rejected this argument, because the court "conclude[d] that defendants [ ] failed to meet their burden of showing, by clear and convincing evidence, that the plaintiffs could not possibly raise any claim in state court against Sklanska."  Id. at *6.  Following the plaintiffs' voluntary dismissal of Sklanska, however, the Infowars Defendants argue that it is now clear that, all along, the plaintiffs named Sklanska as a defendant solely for the purpose of keeping the case out of federal court.  Infowars Defs.' Cross-Mot. at 2-6.

Additionally, the Infowars Defendants request "[d]iscovery of communications between Plaintiffs' counsel and Mr. Sklanska," which they state "is anticipated to shed light on Plaintiffs' gamesmanship."  Id. at 8.  The Infowars Defendants represent that they learned from Sklanska "that Plaintiffs had proffered a possible settlement with him, but then surprised him with the filing of the unconditional voluntary dismissal."  Infowars Defs.' Reply at 3.  According to the Infowars Defendants, "[t]his undermines the argument that Sklanska's lack of insurance" influenced the plaintiffs' decision to voluntarily dismiss Sklanska from the case.  Id.

The plaintiffs, however, faced a strategic incentive, unrelated to removal, when they voluntarily dismissed Sklanska from the case.  As explained above, after the

14

Supreme Court of Connecticut affirmed the sanctions orders, the plaintiffs faced Special

Motions to Dismiss filed by Midas and by Sklanska only: the Infowars Defendants' ability

to pursue their Special Motion to Dismiss had been revoked as part of the sanctions.

See Lafferty, No. UWY-CV18-6046436-S, Defs.' Reply Br. in Supp. of Continued Stay,

No. 300 (Oct. 23, 2020), at 3.  Further, following the ruling by the Supreme Court of

Connecticut, the Infowars Defendants filed a Motion requesting that the stay of

discovery be continued as to all defendants on account of the remaining Special

Motions to Dismiss.  Id.  Thus, even putting to the side the merits of the determinations--

by both Superior Court and the Supreme Court of Connecticut--that the Infowars

Defendants had engaged in sanctionable conduct, it was the Infowars Defendants' own

decision to press the argument regarding a continued stay of discovery as to all

defendants that created a situation in which the Special Motions to Dismiss filed by

Midas and Sklanska posed a potential obstacle for the plaintiffs to obtaining discovery

from the Infowars Defendants, more than two years after the plaintiffs filed suit.  The

plaintiffs overcame this obstacle with respect to Midas when Midas withdrew its Special

Motion to Dismiss without prejudice, see Lafferty, No. UWY-CV18-6046436-S,

Withdrawal, No. 303 (Oct. 26, 2020), and they overcame it with respect to Sklanska

when they voluntarily dismissed him from the case, see id., No. 301 (Oct. 26, 2020); see

also id., Order, No. 304 (Oct. 27, 2020) (denying request for a continued stay of all

discovery).  Further, the plaintiffs had received confirmation that any potential recovery

against Sklanska would be severely limited by the non-applicability of his insurance

coverage.  See id., Mot. to Withdraw Appearance, No. 292 (Aug. 14, 2020).  Given

these circumstances, the court concludes that the Infowars Defendants have failed to

show that the plaintiffs included Sklanska as a defendant "in bad faith in order to

prevent a defendant from removing the action."  See 28 U.S.C. § 1446(c)(1).  Therefore,

the exception to the one-year deadline for removal does not apply, and the 2020 Notice

of Removal is untimely.[5]  See id.

    Additionally, the court determines that discovery on this issue is not warranted.

As noted above, the Infowars Defendants request "[d]iscovery of communications

between Plaintiffs' counsel and Mr. Sklanska," which they state "is anticipated to shed

light on Plaintiffs' gamesmanship."  Infowars Defs.' Cross-Mot. at 8.  The Infowars

Defendants also represent that they learned from Sklanska "that Plaintiffs had proffered

a possible settlement with him, but then surprised him with the filing of the unconditional

voluntary dismissal."  Infowars Defs.' Reply at 3.  According to the Infowars Defendants,

"[t]his undermines the argument that Sklanska's lack of insurance" influenced the

plaintiffs' decision to voluntarily dismiss Sklanska from the case.  Id.  Whether

Sklanska's lack of insurance coverage guided the plaintiffs' decision to dismiss

Sklanska, however, has no bearing on the fact that Sklanska's dismissal helped the

plaintiffs moot the Infowars Defendants' argument in favor of a continued stay of all

discovery.  In addition, in dismissing Sklanska at this point, plaintiffs were removing a

pro se defendant from the litigation--a pro se defendant who had no insurance.  Pls.'

Mem. at 12.  To the extent that the Infowars Defendants suggest that some other

unidentified aspect of communications between plaintiffs' counsel and Sklanska would

---

[5] On account of the court's conclusion that an Order remanding this case is required, the court terminates as moot the Infowars Defendants' Motion for Marc. J. Randazza to Appear as a Visiting Attorney (Doc. No. 20) and Motion to Transfer to Another District (Doc. No. 18).

reveal "gamesmanship" sufficient to trigger the bad-faith exception under section 1446(c)(1), such a suggestion is vague, speculative, and, given that plaintiffs' counsel is an experienced litigator, frankly implausible.  Therefore, the court concludes that the Infowars Defendants have not shown good cause for discovery on this issue.  See Malibu Media, LLC, 2019 WL 2537671, at *1.

      C.    <u>Costs and Attorneys' Fees</u>

      The plaintiffs seek costs and attorneys' fees pursuant to section 1447(c) of title 28 the U.S. Code, which provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, incurred as a result of the removal."  28 U.S.C. § 1447(c).  "Absent unusual circumstances, courts may award attorney's fees under [section] 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal."  <u>Martin v. Franklin Capital Corp.</u>, 546 U.S. 132, 141 (2005).  The Supreme Court has instructed that, "[i]n applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case."  <u>Id.</u>  Here, the plaintiffs argue that an award of costs and fees is warranted because the Infowars Defendants' second attempt at removal "is the latest episode in a long train of bad-faith litigation misconduct."  Pls.' Mem. at 33.

      As the court noted above, however, one of the issues before the court--whether written consents to the 2018 Notice can support the 2020 Notice--is novel.  <u>See</u> <u>supra</u>, at 13.  With regard to the second issue before the court--the bad-faith exception to the one-year deadline for removal--the court cannot say that the Infowars Defendants lacked an objectively reasonable basis for seeking removal, given that the plaintiffs had in fact dismissed the sole non-diverse defendant, whose inclusion in the case the

Infowars Defendants had previously challenged as fraudulent.  Thus, as with the 2018 Notice of Removal, the court concludes that "the defendants had a basis, albeit thin, upon which to seek removal."  See Lafferty, 2018 WL 5793791, at *6.  The plaintiffs' request for costs and fees is denied.

      E.    <u>Sanctions Motion</u>

The Infowars Defendants, invoking both Connecticut Rule of Professional Conduct 3.6(a) and the court's inherent authority, move for sanctions against plaintiffs' counsel.  See Infowars Defs.' Sanctions Mem. at 1-3.  Under Rule 3.6(a), "[a] lawyer who is participating [in] . . . litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter."  Conn. R. Prof'l Conduct 3.6(a); see D. Conn. L. Civ. R. 83.2(a) (applying the Connecticut Rules of Professional Conduct, except for Rules 1.2 and 1.5, to proceedings in the District of Connecticut). The United States Supreme Court, when analyzing identical language, compared the "substantial likelihood of material prejudice formulation" to the "clear and present danger test," and observed that "[e]ach standard requires an assessment of proximity and degree of harm."  Gentile v. State Bar of Nev., 501 U.S. 1030, 1037 (1991).

Here, the Infowars Defendants argue that the below statement, which was published online by The News-Times, a Danbury, Connecticut-based news organization, on November 18, 2020, and attributed to plaintiffs' counsel, violated Rule 3.6.

18

The families brought this case more than two years ago to hold Alex Jones responsible for his abusive claims.  On the eve of being ordered to make both his accountant and executive assistant available for deposition, he filed a motion just a few minutes before midnight last night seeking to delay the process by moving the entire case to federal court, a known stalling tactic that Sandy Hook families have seen and defeated before in other high-profile cases.  Alex Jones is terrified that the depositions will reveal the truth about him and his business practices.  Every attempt to delay justice only strengthens the result of the Sandy Hook families.

Infowars Defs.' Sanctions Mem. at 1 (quoting Rob Ryser, <u>Sandy Hook Families Accuse</u> <u>Alex Jones of Delay Tactic in Defamation Lawsuit</u>, NEWS-TIMES (Nov. 18, 2020), https://www.newstimes.com/news/article/Sandy-Hook-families-accuse-Alex-Jones-of-delay-15736411.php)).

In their Memorandum in Support of their Motion for Sanctions, the Infowars Defendants quote the substantial likelihood of material prejudice standard in bolded font, but they fail to argue why the disputed statement meets this standard.  <u>See</u> Infowars Defs.' Sanctions Mem. at 2-3.  In their Reply, they contend that the "statement directly attacks Mr. Jones's character, credibility, and reputation"; "directly and falsely accuses Mr. Jones of seeking to refuse to have witnesses examined"; and "sets forth inadmissible supposition that Mr. Jones has been untruthful and that he is engaged in improper (and potentially unlawful) business practices."  Defs.' Reply in Supp. of Mot. for Sanctions (Doc. No. 40) at 4.

Notwithstanding its decision to order a remand of this case, the court will address the Motion for Sanctions, because the statement at issue was made after the 2020 Notice of Removal was filed in this court and pertains to that Notice.  The court concludes that, given the particular circumstances of the case, the Infowars Defendants have failed to show a substantial likelihood of material prejudice.

19

Plaintiffs' counsel's accusation that the Infowars Defendants engaged in dilatory litigation tactics echoed not only the plaintiffs' stated positions in public filings but also the conclusions of the Connecticut Superior Court and the Supreme Court of Connecticut.  See Lafferty, 2020 WL 4248476, at *18-19 (characterizing Jones's invective regarding plaintiffs' counsel as "one part of a whole picture of bad faith litigation misconduct", and concluding that the Infowars Defendants' multiple failures to meet discovery deadlines "reasonably could be found to make up a pattern of willfulness").  As Note 4 of the Commentary to Rule 3.6, explains, "[c]ertain subjects would not ordinarily be considered to present a substantial likelihood of material prejudice," including "the claim, offense or defense involved" and "information contained in a public record."  Conn. R. Prof'l Conduct 3.6 cmt. n. 4.  Here, plaintiffs' accusations of dilatory litigation tactics have been a part of their legal claims relating to discovery disputes, sanctions, and the instant Motion to Remand, and both the Connecticut Superior Court and the Supreme Court of Connecticut have concluded that the Infowars Defendants in fact engaged in sanctionable conduct.  See Lafferty, 2020 WL 4248476, at *16-19; Pls.' Mem. at 6-13.

Plaintiffs' counsel's accusation that Defendant Jones is fearful of what depositions would reveal about his business practices treads closer to sanctionable conduct.  Note 5 of the Commentary to Rule 3.6 observes that statements regarding "the character, credibility [or] reputation . . . of a party" are "more likely than not to have a material prejudicial effect on a proceeding."  Conn. R. Prof'l Conduct 3.6 cmt. n. 4.  Given, however, that the accusation concerning Jones's business practices appears as a single sentence embedded within a larger statement regarding dilatory litigation

tactics which, as explained above, the court does not find to be sanctionable, the court concludes that this accusation does not present a substantial likelihood of material prejudice.  In other words, the potential for the statement to cause material prejudice is mitigated by its context.  Therefore, the Infowars Defendants' Motion for Sanctions is denied.

**V.    CONCLUSION**

For the reasons discussed above, the court grants the plaintiffs' Motion to Remand (Doc. No. 27), denies the plaintiffs' request for costs and attorneys' fees, denies the Infowars Defendants' Cross-Motion for Jurisdictional Discovery (Doc. No. 33), and denies the Infowars Defendants' Motion for Sanctions (Doc. No. 19).  The court terminates as moot the Infowars Defendants' Motion for Marc. J. Randazza to Appear as a Visiting Attorney (Doc. No. 20) and Motion to Transfer to Another District (Doc. No. 18).  The court orders that the case is remanded to the Superior Court of Connecticut. The Clerk is directed to close the case.

**SO ORDERED.**

Dated this 5th day of March 2021, at New Haven, Connecticut.


 /s/ Janet C. Hall_____
Janet C. Hall
United States District Judge